IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-478-FL

| | | |
|---|---|---|
| MARISA BELTRAN HOOKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings. (DE 17, 21). Pursuant to 28 U.C.S. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge James E. Gates entered a memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. (DE 25). Plaintiff timely objected to the M&R, and defendant did not respond. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the M&R, albeit in part on different grounds set forth herein.

## BACKGROUND

On December 12, 2012, plaintiff filed an application for disability insurance benefits and protectively filed an application for supplemental security income, alleging a disability onset date of November 1, 2009. Plaintiff's application was denied both initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"), who, after a hearing held August 27, 2014, denied plaintiff's application by decision dated October 9, 2014. Later, plaintiff timely requested review by the Appeals Council, and submitted additional evidence as part of her

request.  The Appeals Council denied review on August 31, 2015, and the ALJ's October 9, 2014

decision became defendant's final decision.  On September 16, 2015, plaintiff filed suit in this court,

pursuant to 42 U.S.C. §§ 405(g) and 1383(g), seeking review of defendant's decision.

## COURT'S DISCUSSION

A.      Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision

denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by

substantial evidence and were reached through application of the correct legal standard." Craig v.

Chater, 76 F.3d 585, 589 (4th Cir. 1996).  "Substantial evidence is . . . such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S.

389, 401 (1971) (quotations omitted).  The standard is met by "more than a mere scintilla of

evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make

credibility determinations, or substitute [its] judgment" for defendant's.  Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis

for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why,

and specific application of the pertinent legal requirements to the record evidence." Radford v.

Colvin, 734 F.3d 288, 295 (4th Cir. 2013).  An ALJ's decision must "include a narrative discussion

describing how the evidence supports each conclusion," Monroe v. Colvin, 826 F.3d 176, 189

(4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must

build an accurate and logical bridge from the evidence to his conclusion." Id. (quoting Clifford v.

Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

2

To assist it in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the social security claimant during the first four steps of the inquiry, but shifts

to the Commissioner of Social Security ("Commissioner") at the fifth step. <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 1, 2009, the alleged onset date of plaintiff's disability. At step two, the ALJ found that plaintiff had the following severe impairments: bipolar disorder, obesity, and arthritis of the knees. However, at step three, the ALJ determined that these impairments were not severe enough to meet or, either individually or in combination, medically equal one of the listed impairments in the regulations ("listings" or "listed impairments"). <u>See</u> 20 C.F.R. § 404, Subpt. P, App. 1 [hereinafter "Listing of Impairments"].

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform light work, subject to the following limitations:

> [T]he claimant is limited to standing and walking four hours in an eight hour day; the ability to push and pull with the lower extremity was on [ ] an occasional basis; she can use traverse stairs, bend, stoop, kneel, crouch, and crawl on an occasional basis; the claimant is limited to simple, routine, repetitive tasks in an environment with only occasional interaction with other workers or supervisors or the public.

(Tr. 15 ¶ 4). In making this assessment, the ALJ found plaintiff's statements about the severity of her symptoms not fully credible. At step four, the ALJ concluded plaintiff was unable to perform her past relevant work. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

B.     Analysis

Plaintiff objects to the magistrate judge's treatment of four issues: listed impairments, obesity, medical opinion evidence, and RFC.   First, plaintiff argues that the ALJ erred in determining that her impairments did not meet or equal listings 12.04 and 1.02.   Second, plaintiff argues that the ALJ filed to analyze the impact of plaintiff's obesity upon her ability to work.   Third, plaintiff argues that the ALJ failed to accord proper weight to a medical source statement and a consultative opinion.   Lastly, plaintiff argues that the ALJ erred in determining that she is capable of performing light work.

1.     Listed Impairments

Plaintiff argues that the ALJ should have found her disabled at step three, on the basis of two listings: 12.04, which covers "affective disorders," such as bipolar syndrome; and 1.02, which covers "[m]ajor dysfunction of a joint," such as inability to ambulate.   Listing of Impairments, §§ 12.04, 1.02.

The Listing of Impairments  "describes for each of the major body systems impairments that [defendant] consider[s] to be severe enough to prevent an individual from doing any gainful activity," irrespective of vocational factors such as "age, education, or work experience."  20 C.F.R. §§ 404.1525(a), 416.925(a).  The listed impairments "are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect."  Sullivan v. Zebley, 493 U.S. 521, 529–30 (1990).  "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results."  Id. at 530.  A social security claimant bears the burden of demonstrating that his "medically determinable" impairments, those impairments expected to either result in death or "last for a continuous period of at least 12 months," 20 C.F.R.

5

§§ 404.1525(c)(5), (d); 416.925(c)(5), (d), meet or, either individually or in combination, medically equal one of the listed impairments.  Id. §§ 404.1525(c)(4)–(5), 416.925(c)(4)–(5); Pass, 65 F.3d at 1203 (holding that social security claimants bear the burden of proof at step three).

Even though a social security claimant may not "meet" the criteria for a listed impairment, his impairments may "medically equal" those criteria.  20 C.F.R. §§ 404.1525(c)(5); 416.925(c)(5). A social security claimant's impairments medically equal a listed impairment where they are "at least equal in severity and duration to the criteria of any listed impairment."  Id. §§ 404.1526(a), 416.926(a).  In other words, a social security claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment."  Zebley, 493 U.S. at 531; accord 20 C.F.R. §§ 404.1526(a), 416.926(a).  However, the social security claimant's evidence must be targeted to the most analogous listed impairment's criteria, not the social security claimant's overall functional limitations.  See Social Security Ruling ("S.S.R.") 83-19, 1983 WL 31248, at *91–92; see also S.S.R 96-6p, 1993 WL 374180, at *1–2 (reinstating S.S.R. 83-19); Zebley, 493 U.S. at 531.

a.    Listing 12.04, Affective Disorder

Plaintiff argues that the ALJ should have found her disabled at step three, due to her bipolar syndrome and depression causing her to meet or equal criteria contained in paragraphs "A" and "B" of listing 12.04.  To support her argument, plaintiff relies upon evidence of a medical source statement completed by a treating medical provider, Family Preservation Services ("F.P.S. statement"); a report from a consultative examination performed by William G. Clark, M.D. ("Dr. Clark's report"); and portions of her own testimony.  In response, defendant argues that the ALJ considered the evidence relied upon by plaintiff, weighed it against the record as a whole, and concluded it did not satisfy the requirements of paragraph "B" of listing 12.04.

6

Listing 12.04 covers "affective disorders . . . characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." Listing of Impairments, § 12.04. "The required level of severity for these disorders is met when the requirement in both [paragraphs] A and B are satisfied, or when the requirements in [paragraph] C are satisfied." Id. Accordingly, if a claimant is unable to meet the criteria in paragraph "C," then he or she must satisfy the criteria in both paragraphs "A" and "B" in order to show impairments meeting or equaling listing 12.04. See id.; e.g., Hardison v. Colvin, No. 4:14-CV-76-FL, 2015 WL 5725534, at *5–6 (Sept. 30, 2015).

Plaintiff argues that she satisfies the criteria in both paragraphs "A" and "B."[1] However, with respect to plaintiff's objection to the ALJ's analysis of her impairments according to paragraph "B," plaintiff repeats the same general argument, and relies upon the same evidence, that was considered unavailing in her memorandum supporting her motion for judgment on the pleadings. (Compare DE 18, 8, with DE 26, 3–4). For example, as noted in the M&R, the ALJ considered at length the F.P.S. statement, and explained his assignment of little weight based upon citations to substantial countervailing evidence in the record. (Tr. 18–20). Similarly, the ALJ considered plaintiff's testimony as it related to listing 12.04, and plaintiff does not dispute the ALJ's assignment of little weight to her testimony on that topic. (Tr. 15–16). The ALJ considered also Dr. Clark's report (Tr. 19), and for reasons more fully described below, the ALJ's failure to assign a weight to the report was harmless in light of the report's consistency with other evidence showing that

---

[1] As noted by the M&R, plaintiff does not contest the ALJ's determination that she does not satisfy the criteria of paragraph "C." Moreover, the M&R concludes that substantial evidence supports the ALJ's determination. Where plaintiff makes no objection to this determination, and where review of the M&R's analysis on this point reveals no clear error, see Diamond, 416 F.3d at 315; Camby, 718 F.2d at 200, the court incorporates herein and adopts as its own the M&R's conclusion that substantial evidence supports the ALJ's determination that plaintiff fails to meet the requirements of paragraph "C" of listing 12.04.

7

plaintiff's impairments did not meet the requirements of any listing. See Morgan v. Barnhart, 142 F. App'x 716, 723 (4th Cir. 2005).

Where the M&R's analysis on this point is thorough and correct, the court incorporates herein and adopts as its own the M&R's conclusion that the ALJ considered the evidence cited by plaintiff, weighed it against substantial countervailing evidence, and determined that plaintiff did not satisfy the requirements of paragraph "B" of listing 12.04. See Diamond, 416 F.3d at 315; Camby, 718 F.2d at 200. Accordingly, plaintiff's argument that the ALJ erred in not considering whether she meets the requirements of paragraph "A" is moot, where the criteria of both paragraphs "A" and "B" must have been met in light of plaintiff's inability to satisfy the criteria of paragraph "C." See Hardison, 2015 WL 5725534, at *5–6. As a result, plaintiff's argument that the ALJ erred in determining that her impairments do not meet or equal listing 12.04 must fail.

b.      Listing 1.02, Joint Dysfunction

Plaintiff argues that the ALJ should have found her disabled at step three, due to her impairments meeting or equaling listing 1.02, on the bases of her "chronic severe bilateral knee pain, difficulty walking, and osteoarthritis in both knees." (DE 26, 6). To support her argument, plaintiff relies upon evidence of her arthritis diagnosis, Dr. Clark's report, and a magnetic resonance imaging ("MRI"). Although plaintiff attempts now to cure her previous failure to allege an inability to ambulate effectively, she nonetheless makes the same general argument, and relies upon the same evidence, that was considered unavailing in her memorandum supporting her motion for judgment on the pleadings. (Compare DE 18, 8–9, with DE 26, 6–8). For example, as noted in the M&R, "[t]he fact that plaintiff has had bilateral knee pain for an extended period and the results of the imaging do not themselves, of course, establish the functional loss required [to show] the inability

8

to ambulate effectively." (DE 25, 20). The ALJ reached the same conclusion, based upon the same evidence relied upon by plaintiff in support of her instant objection. (See Tr. 16–19).

The ALJ considered also Dr. Clark's report (Tr. 16–17, 19), and for reasons more fully described below, the ALJ's failure to assign a weight to the report was harmless in light of the report's consistency with other evidence showing that plaintiff's impairment did not meet or equal the requirements of any listing. See Morgan, 142 F. App'x at 723. For example, as noted in the M&R, "Dr. Clark did not himself make an explicit finding that plaintiff had difficulty ambulating," and his report aligned with the ALJ's determination, where the report recited plaintiff's statement that she "can walk without assistance but on occasion, walks with a cane." (Tr. 383). Where the M&R's analysis is thorough and correct, the court incorporates herein and adopts as its own the M&R's conclusion that the ALJ considered the evidence cited by plaintiff, weighed it against substantial countervailing evidence, and determined that plaintiff did not satisfy the requirements of listing 1.04. See Diamond, 416 F.3d at 315; Camby, 718 F.2d at 200. Accordingly, plaintiff's argument on this point must fail.

2. Obesity

Plaintiff next argues that the ALJ failed adequately to consider the effect of plaintiff's obesity on her ability to work. Similar to plaintiff's other objections, this argument repeats the same language found unavailing in her memorandum supporting her motion for judgment on the pleadings, and it relies upon the same evidence cited therein. (Compare DE 18, 9–10, with DE 26, 9–10). Plaintiff's instant objection to the M&R's analysis adds only her assertion that the ALJ "failed to specifically tie any of plaintiff's functional limitations to her morbid obesity, as required by SSR 02-01p." (DE 26, 10).

There is no listing for obesity. However, obesity may be a severe impairment, it may affect the ALJ's "equivalence" analysis, and it may affect a social security claimant's RFC. See S.S.R. 02-1P, 2002 WL 34686281, at *4–6. Social Security Ruling 96-8P, which explains how the ALJ should assess a social security claimant's RFC, calls for a "function-by-function" assessment of a social security claimant's limitations. S.S.R. 96-8P, 1996 WL 374184, at *1. Once the required "function-by-function" assessment is complete, the ALJ must express a social security claimant's RFC in terms of exertional levels of work. See id. That "function-by-function" assessment must include a threshold level of analysis in order to allow this court to "review meaningfully" the ALJ's conclusions. Mascio, 780 F.3d at 636–37.

Here, the ALJ found at step two that plaintiff's obesity was a "severe impairment," and thereby determined that it imposed more than a minimal limitation on plaintiff's physical or mental ability to do basic work activities." (Tr. 13 ¶ 2); see 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ noted that he "considered the impact of obesity, as discussed in Social Security Rule 02-1p, at each step of the sequential adjudication process" (Tr. 13 ¶ 3), which is reflected throughout the ALJ's opinion. (See Tr. 15–18). Following consideration of the impact of plaintiff's obesity, and a summary of relevant evidence in the record, the ALJ explained why he found plaintiff's weight not to be disabling: "The claimant's weight was her primary problem, so her doctors wanted to get her weight down before proceeding to knee surgery because of her young age. However, even with her weight, she was able to take care of her home in increments and take care of her children." (Tr. 19). Furthermore, the ALJ's RFC determination contained limitations responsive to plaintiff's obesity, such as limiting plaintiff to standing and walking only for four hours in an eight-hour day; pushing and pulling with the lower extremities only on an occasional basis; and climbing stairs, bending, stooping, kneeling, crouching, and crawling only on an occasional basis. (Tr. 15). Social

Security Ruling 02-1P recognizes that these limitations reflect obesity's effect upon certain exertional functions, as they do here. S.S.R. 02-1P, 2000 WL 628049, at *6.

At step four, the ALJ found plaintiff unable to perform her past relevant work, in part due to exertional and postural limitations of her RFC that reflected the effects of her obesity. (See Tr. 20–21). At step five, the ALJ included in the hypothetical question provided to the vocational expert those RFC limitations responsive to plaintiff's obesity; and on the basis of that expert's opinion, the ALJ determined that there existed jobs in significant numbers in the national economy that plaintiff could perform. (Tr. 21–22).

The foregoing review shows that the ALJ's sequential analysis satisfied the requirements of S.S.R. 02-1P, where the ALJ, at each step, considered evidence of plaintiff's obesity and described the effects of plaintiff's obesity, and where then the ALJ specifically accounted for the effects of plaintiff's obesity in determining plaintiff's RFC and functional limitations. See S.S.R. 02-1P, 2000 WL 628049, at *4–6. Accordingly, plaintiff's argument that the ALJ failed to link plaintiff's functional limitations to her obesity must fail.

Moreover, plaintiff's description of the ALJ's analysis as "conclusory" is inapposite. By way of illustration, the ALJ's treatment of plaintiff's obesity differs from an ALJ's analysis of obesity found insufficient in Sellars v. Colvin, a recent decision by this court. See Sellars, No. 7:15-CV-124-FL, 2016 WL 4083376, at *5–8 (E.D.N.C. Aug. 1, 2016) (finding that "the ALJ's boilerplate statement that it had incorporated 'all allegations, findings, and opinions' into plaintiff's RFC does not give this court the opportunity to meaningfully review the ALJ's reasoning"). In Sellars, the ALJ

erred by improperly discounting a plaintiff's allegations of pain based upon his conservative treatment history, and by inadequately explaining inconsistent evidence in the record. Id.

Here, in contrast to Sellars, the ALJ did not discount plaintiff's allegations of pain caused by her obesity, but rather considered them in conjunction with other portions of plaintiff's testimony. (See, e.g., Tr. 14) ("The claimant testified that her weight and knee pain limits her functioning, but she cooks, and does minimal chores of laundry, bathroom cleaning, mopping, and sweeping in short increments."). In addition, as described above, the ALJ explained the connections between the effects of plaintiff's obesity and certain limitations upon her RFC. (Tr. 19). In further contrast to Sellars, the ALJ here explained his reasons for assigning little weight to evidence inconsistent with the record as a whole. For example, the ALJ accorded little weight to a physician who opined that plaintiff had the ability to do medium-level work, explaining that the physician failed to consider, among other things, "claimant's subjective complaints . . . of progressing arthritis." (Tr. 20). In sum, comparison of the ALJ's analysis of plaintiff's obesity to the analysis found insufficient in Sellars shows that the ALJ's explanation of determinations relevant to the effects of plaintiff's obesity demonstrated sufficient analytical rigor. See Mascio, 780 F.3d at 637; Monroe, 826 F.3d at 189.

3.    Medical Opinions

Plaintiff argues that the ALJ erred in failing to recontact one of plaintiff's treating medical providers in order to gather more information about the F.P.S. statement, and that the ALJ failed to address the weight accorded to Dr. Clark's report. In response, defendant argues that the ALJ was not required to recontact the provider of the F.P.S. statement because the record contained sufficient evidence to determine plaintiff's disability without additional information. In response to plaintiff's second contention, defendant argues that the ALJ was not obligated to assign weight to Dr. Clark's

report, where the report did not contain a medical opinion, and, alternatively, where any failure to assign weight to the report was harmless.

An ALJ must weigh and evaluate all medical opinions received, regardless of their source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, opinions from treating sources are given greater weight than opinions from non-treating sources, such as consultative examiners. Id. §§ 404.1527(c)(2), 416.927(c)(2). However, any medical opinion, even one from a treating source, may be given less weight if it is not well supported or if it is inconsistent with other evidence in the record. Id. §§ 404.1527(c)(3)–(4), 416.927(c)(3)–(4); see Craig, 76 F.3d at 590. Other factors also may influence an ALJ's assignment of weight to a medical opinion, such as supportability and consistency of an opinion, as well as the medical expert's area of speciality. 20 C.F.R. § 404.1527(c)(3)–(5).

While an ALJ is under no obligation to accept any medical opinion, he or she must nevertheless explain the weight afforded such opinions. See S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); see also Russell v. Comm'r of Soc. Sec., 440 F. App'x 163, 164 (4th Cir. 2011). An ALJ has a duty to explain the administrative decision so as to enable meaningful judicial review. "While the [Commissioner] is empowered . . . to resolve evidentiary conflicts, the [Commissioner], through the ALJ, is required to explicitly indicate 'the weight given to all relevant evidence.'" Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987) (quoting Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984)). If such an explanation is provided, then the court "must defer to the ALJ's assignments of weight unless they are not supported by substantial evidence." Dunn v. Colvin, 607 F. App'x 264, 271 (4th Cir. 2015).

a. F.P.S. Statement

Plaintiff objects to treatment of the F.P.S. statement on the basis of the ALJ's decision not to recontact the medical provider to determine whether additional information was available. However, the regulations plaintiff relies upon to support her argument are not applicable, where they were removed some years before the ALJ rendered his decision, and where those sections now apply to consultative examinations. Compare 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) (2011), with 20 C.F.R. §§ 404.1512(e), 416.912(e) (2015).

Instead, the ALJ's decision of whether to recontact treating physicians is governed, in relevant part, by 20 C.F.R. § 416.920b. Subsection (b) provides, "If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have." Id. § 416.920b(b). As relevant here, subsection (c) states:

> If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. . . . We might not take all of the actions listed below.

Id. § 416.920b(c). As it pertains to plaintiff's objection, one of the listed actions the ALJ may take is to "recontact your treating physician, psychologist, or other medical source." Id. § 416.920b(c)(1). Taken together, "the regulations in past and current form clearly state that the ALJ's duty to recontact a treating source arises only when the evidence as a whole is inadequate to determine the issue of disability." Hawley v. Colvin, No. 5:12-CV-260-FL, 2013 WL 6184954, at *6 (E.D.N.C. Nov. 25, 2013) (reconfirming application of the rule after the regulations were modified).

Here, after describing the contents of the F.P.S. statement, the ALJ assigned it little weight in light of its inconsistency with other evidence in the record. He explained the reasons for his decision as follows:

> The notes show the claimant had not been seen long enough to speak to work situations as she had not worked. This opinion . . . is not signed, and the undersigned is unable to determine the author. Additionally, this opinion is only based on a four month period, and it is not consistent with evidence of a GAF of 65 indicating only mild difficulties functioning, improved sleep, normal thought process, spending time with her children, and taking care of her household.

(Tr. 20). In sum, the ALJ considered the F.P.S. statement, decided to assign it little weight in light of substantial countervailing evidence in the record, explained that plaintiff's RFC "is supported by the evidence of record as a whole," and made no indication that additional evidence was necessary to determine plaintiff's disability. (Tr. 20).

In light of this analysis, the ALJ had no obligation to recontact F.P.S., where the F.P.S. statement was inconsistent with other evidence in the record, including the evidence specifically cited by the ALJ, and where the ALJ relied upon substantial evidence in assigning little weight to the F.P.S. statement. See 20 C.F.R. § 416.920b; Richardson, 402 U.S. at 401. Therefore, the ALJ was able to weigh other relevant evidence in the record in order to determine the degree of plaintiff's disability without recontacting F.P.S. See 20 C.F.R. § 416.920b(b). Accordingly, plaintiff's objection on the basis of the ALJ's decision not to recontact F.P.S. is without merit.

      b.    Dr. Clark's Report

Plaintiff argues that the ALJ erred in failing to address the weight accorded to Dr. Clark's report. The M&R rejected this argument, suggesting instead that Dr. Clark's report did not contain a medical opinion requiring assignment of weight, and, alternatively, that any failure to assign weight to the putative opinion was harmless. For the reasons below, departing in part from the

reasoning of the M&R, the court finds that a portion of Dr. Clark's report represents a medical opinion, but that the ALJ's failure to assign weight to the opinion was harmless in light of the opinion's consistency with other evidence in the record.

Pursuant to 20 C.F.R. § 404.1527(c), an ALJ must weight every medical opinion received regardless of its source. A single report may contain several medical opinions from a single physician. See, e.g., Morgan, 142 F. App'x at 722. For purposes of evaluating social security claims, a medical opinion is defined as follows: "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2); accord Morgan, 142 F. App'x at 722; Loveless v. Colvin, 810 F.3d 502, 507 (7th Cir. 2016).

For example, a physician's letter stating that a plaintiff's "condition of the lower spine . . . prevents him from heavy lifting and standing for long periods of time. Any activities that entail[ ] heavy lifting or standing for greater than 3–4 hours should be avoided," plainly constitutes a medical opinion that reflects judgments about the nature and severity of a claimant's impairments. Carter v. Colvin, No. 5:12-CV-736-FL, 2014 WL 351867, at *7 (E.D.N.C. Jan. 31, 2014). By way of contrast, a report comprised of treatment notes that "describes plaintiff's complaints, noting that plaintiff has had fairly disabling pain in her neck and . . . . also include[s] findings from an MRI of the cervical spine, as well as examination findings," does not represent a medical opinion as to a claimant's functional limitations. Rivera v. Colvin, No. 5:11-CV-569-FL, 2013 WL 2433515, at *4–5 (E.D.N.C. June 4, 2013) (quotation omitted).

An ALJ's failure to consider a physician's medical opinion or to discuss the weight given to that opinion may require remand or reversal. See, e.g., Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). However, "reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached." Morgan, 142 F. App'x at 723. In particular, an ALJ's failure to consider a physician's medical opinion may be harmless, where the physician's opinion is consistent with the ALJ's determination of a claimant's RFC and disability status, and where the ALJ's decision otherwise is supported by substantial evidence. Id.; see also Love-Moore v. Colvin, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013); Van Vickle v. Astrue, 539 F.3d 825, 830–31 (8th Cir. 2008) (finding misconstrual of a physician's opinion to be harmless error where "[t]he ALJ properly considered the physical limitations that [the physician] placed on [the plaintiff], and actually adopted them"). For example, an ALJ's failure to mention a physician's report was harmless error where the report "does not state that plaintiff is more limited in her functioning than that expressed in the ALJ's RFC determination, which takes into account plaintiff's limitations and was supported by substantial evidence in the record." Rivera, 2013 WL 2433515, at *5.

Here, Dr. Clark's report contains several different sections, including "HISTORY OF PRESENT ILLNESS," "DAILY FUNCTIONS," "PHYSICAL EXAMINATION," and "ASSESSMENT." (Tr. 382–84). With the exception of the section titled "ASSESSMENT," the report contains treatment notes describing plaintiff's statements and subjective complaints. (Tr. 382–83). For example, in the section titled "PHYSICAL EXAMINATION," Dr. Clark notes that "[plaintiff] states when she is in a store, she needs to use a buggy. When she is at home, she uses a cane." (Tr. 384) (quotation omitted). Similarly, in the section titled "HISTORY OF PRESENT ILLNESS," Dr. Clark recites plaintiff's report that "[t]he pain is worse with any activity.

17

It is worse with cold wet weather." (Tr. 382). The section titled "ASSESSMENT," which concludes Dr. Clark's report, states in its entirety:

> A 40-year-old with almost certainly degenerative arthritis to both knees. The right knee was x-rayed in July of 2012 that showed arthritis in all three compartments. The left knee clinically appears just as bad and I suspect that her knee x-ray on the left would also show tricompartmental arthritis. Her knees are getting worse. They certainly are limiting. She also has extensive psychiatric problems. I presume Disability will obtain the records from her psychiatric provider. She states at this juncture she does not think there is another appointment for her to be seen.

(Tr. 384) (emphasis added). The ALJ considered Dr. Clark's report, and described its contents at length, including the "ASSESSMENT" section. (Tr. 16–17). However, the ALJ did not assign a specific weight to Dr. Clark's report, as he did to other evidence in the record. (See Tr. 19–20).

With the exception of the "ASSESSMENT" section, Dr. Clark's report represents treatment notes that merely describe plaintiff's subjective complaints and relate examination findings, similar to the report in Rivera. See 2013 WL 2433515, at *4–5. Plaintiff's citation to those portions of the report wherein Dr. Clark "noted that plaintiff had decreased range of motion and point tenderness in both knees," and "that plaintiff could not squat or perform tandem gait due to her knee problems," represent examination findings derived from physical observations of plaintiff, not medical opinions. (DE 26, 12); see Rivera, 2013 WL 2433515, at *4–5 (identifying findings of "normal gait," "normal coordination," and "limited side bending" as "examination findings"). Accordingly, Dr. Clark's statements in sections apart from the "ASSESSMENT" section do not represent medical opinions, and the ALJ was not required to discuss them or to assign them specific weight. See 20 C.F.R. § 404.1527(c); Morgan, 142 F. App'x at 723.

In contrast to the sections described above, certain of Dr. Clark's statements in the section titled "ASSESSMENT" represent a medical opinion. See Carter, 2014 WL 351867, at *7. In particular, Dr. Clark's statement that plaintiff's "knees are getting worse" and "certainly are limiting," reflect his judgment about the impact of her impairments upon her ability to function. See 20 C.F.R. § 416.927(a)(2). As a medical opinion, those statements require some consideration by the ALJ, and the ALJ erred in failing to assign them a certain weight. See 20 C.F.R. §§ 404.1527(c), 416.927(a)(2).

However, the ALJ's error in this respect was harmless for several reasons. First, Dr. Clark's opinion was consistent with the ALJ's determination of plaintiff's RFC. In particular, the ALJ's determinations that plaintiff is capable only of light exertional work; that she is limited to standing and walking only for four hours; and that she can bend, stoop, kneel, crouch, and crawl only on an occasional basis, align with Dr. Clark's general opinion that plaintiff's knees are "limiting." (Tr. 15 ¶ 4); see Morgan, 142 F. App'x at 723. In addition, for the reasons described more fully below, the ALJ's RFC determination is supported by substantial evidence independent of Dr. Clark's opinion. See Morgan, 142 F. App'x at 723. Moreover, the ALJ considered Dr. Clark's opinion and noted its underlying findings where he described the contents of the report. (Tr. 16–17); see Love-Moore, 2013 WL 5350870, at *2. For these reasons, the ALJ's failure to assign a weight to Dr. Clark's opinion was harmless error, and plaintiff's objection on this basis must fail. See Morgan, 142 F. App'x at 723.

4.    Residual Functional Capacity

Plaintiff argues that the ALJ erred in determining that she was able to perform a limited range of light work. In support of her argument, plaintiff relies upon her testimony concerning her physical and psychological limitations, the F.P.S. statement's description of her psychological

19

limitations, and the vocational expert's response to an alternative hypothetical question based upon portions of the foregoing evidence. In response, defendant argues that the ALJ did not err, where he considered the evidence relied upon by plaintiff, contrasted it with countervailing evidence, and relied upon the record as a whole in determining plaintiff's RFC.

Social Security Ruling 96-8P, which explains how the ALJ should assess a social security claimant's RFC, calls for a "function-by-function" assessment of a social security claimant's limitations. S.S.R. 96-8P, 1996 WL 374184, at *1. Once the required "function-by-function" assessment is complete, the ALJ must express a social security claimant's RFC in terms of exertional levels of work. See id. The "function-by-function" assessment must include a threshold level of analysis in order to allow this court to "review meaningfully" the ALJ's conclusions. Mascio, 780 F.3d at 636–37.

In a recent series of decisions, the Fourth Circuit Court of Appeals has clarified the level of analysis a reviewing court requires from an ALJ. "The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637. Rather, it is the ALJ's duty to perform a "function-by-function" analysis and "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189.

First, the court addresses plaintiff's argument that the F.P.S. statement's description of her psychological limitations shows that the ALJ erred in determining her capable of light work. As noted previously, the ALJ considered the contents of the F.P.S. statement, assigned it little weight, and explained the reasons for his assignment. (Tr. 20). In doing so, the ALJ considered the particular portions of the F.P.S. statement that plaintiff cites in support of her objection, including

20

the effects of plaintiff's "psychologically based symptoms" upon her ability to work. (Tr. 20). The ALJ assigned little weight to those portions of the F.P.S. statement because they were inconsistent with other, substantial evidence in the record indicating "only mild difficulties functioning, improved sleep, [and] normal thought process," for which the ALJ cited specific parts of the record containing countervailing evidence. (Tr. 20); see Craig, 76 F.3d at 589. Accordingly, those portions of the F.P.S. statement relied upon by plaintiff do not deprive the ALJ's RFC determination of support from the record as a whole. See Craig, 76 F.3d at 589.

Second, the court addresses plaintiff's argument that her testimony concerning physical and psychological limitations shows that the ALJ erred in determining her capable of light work. The ALJ considered plaintiff's testimony on these topics, and considered their effect upon her functional capabilities, stating in relevant part:

> The claimant said she is bipolar, and she has been on and off medication for the last 10 years. She has gotten better, but she is still irritable, angry, has mood swings, crying spells, difficulty sleeping and difficulty focusing. . . . Around the house, the claimant testified she is able to cook with a chair, and her ex-husband had someone come and clean up twice a week. She is able to grocery shop with a scooter. The claimant testified that she has girl friends that come over, and at night, she is able to make sure her kids take baths and get their clothes ready for school; she has a 7-year old and a 10-year old.

(Tr. 15–16).

Considering plaintiff's testimony in conjunction with other evidence in the record, the ALJ found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 16). Plaintiff does not object to the ALJ's finding her testimony of minimal credibility,[2] and the ALJ's

---

[2] Although plaintiff several times adds the adjective "credible" in references to her testimony (see DE 26, 5, 7, 14, 15), such conclusory descriptions "do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano, 687 F.2d at 47. Upon review of the M&R's analysis of the ALJ's assessment of plaintiff's testimony, the court finds no clear error in its conclusion that the ALJ relied upon substantial evidence in

determination on this point is supported by substantial evidence. See Craig, 76 F.3d at 593–96. In particular, the ALJ found more credible the countervailing opinions of W. W. Albertson, Ed. D, and Bonny Gregory, M.D., who stated that "claimant's symptoms from her bipolar disorder are controlled with continued medication management and therapy"; as well as finding credible the opinion of Jack Drummond, M.D., who stated that "claimant can do light work with occasional climbing, . . . [and] occasional balancing," which the ALJ found "consistent with the evidence that shows that claimant has pain and limitation with extension and flexion." (Tr. 19–20). Accordingly, the ALJ relied upon substantial evidence in finding plaintiff's testimony concerning her physical and psychological limitations not to be entirely credible. Craig, 76 F.3d at 589. Therefore, those portions of plaintiff's testimony upon which she relies in her objection do not deprive the ALJ's RFC determination of sufficient support from the record as a whole. See id.

Lastly, the court addresses plaintiff's argument that the ALJ's RFC determination failed properly to account for the vocational expert's response to an alternative hypothetical question, based upon certain portions of plaintiff's testimony and the F.P.S. statement, wherein the expert stated that no jobs would be available to a hypothetical person with certain limitations described by plaintiff's counsel. However, plaintiff relies upon only one of two opinions provided by the vocational expert; one opinion was based upon a hypothetical individual capable of performing light work with the limitations determined by the ALJ, and the other opinion was based upon a hypothetical individual capable of performing light work with additional limitations described by plaintiff's counsel and based upon portions of the foregoing evidence. After determining that substantial evidence showed plaintiff capable of performing light work with the limitations

---

finding plaintiff's statements not entirely credible. See Diamond, 416 F.3d at 315; Camby, 718 F.2d at 200. Accordingly, the court incorporates it herein and adopts it as its own. See 28 U.S.C. § 636(b)(1).

described in his decision, the ALJ considered and relied upon the vocational expert's response to the first hypothetical, where the expert stated that certain jobs existed in significant numbers in the national economy that plaintiff could perform. (Tr. 21).

Plaintiff relies upon her testimony and the F.P.S. statement to support her argument that the ALJ should have given controlling weight to the vocational expert's second opinion, that no jobs were available. However, for the reasons described above, where substantial evidence supported both the ALJ's determination that plaintiff's testimony was not entirely credible, and the ALJ's determination that the relevant portions of the F.P.S. statement should be accorded little weight, see Richardson, 404 U.S. at 401; and where the ALJ adequately explained numerous reasons for determining that plaintiff was capable of performing light work with certain limitations, plaintiff's objection on the basis of the vocational expert's testimony is overruled. See Mascio, 780 F.3d at 637. Accordingly, plaintiff's objection to the ALJ's determination of her RFC fails. See id.

## CONCLUSION

Based upon the foregoing, the court ADOPTS the M&R (DE 25), albeit in part on different grounds; GRANTS defendant's motion for judgment on the pleadings (DE 21); and DENIES plaintiff's motion for the same. (DE 17). The clerk of court is DIRECTED to close this case.

This 16th day of September, 2016.

LOUISE W. FLANAGAN
United States District Judge